Final case this morning, 24-1725, E.R. v. Beaufort County School District, Mr. Ouellette. May it please the Court, Sean Ouellette for the appellant, E.R. v. Beaufort County School District, Mr. Ouellette. I just have to go in and ask you this. Okay, you apply the personal interest statute, which is three years. What does that mean? If you apply the statute of three years, then what does that mean for your client? It means our client's claim is timely. There's no dispute about that from the other side. You can file it by what age? By age 21, Your Honor. Because you're adding three plus the 18. That's correct. There's no dispute that you'd add three plus the 18. So what? None of you even bring it up. And I don't quite understand. I look at that statute. It says you got a year after the age majority. The South Carolina Supreme Court has kind of bounced back and forth on this thing. I mean, there have been cases in which there's a recent case in which it did just what you just said. It was a different type of offense, but it had a six-year statute of limitations. But they applied it for the time period and it's still that one year. I'm just curious. I didn't really want to ask the question because no one brought it up. And I figure you guys know South Carolina law better than I do. I agree, Your Honor. So we are in agreement here that if that applies, then you have three years from the age of majority. You're not limited to the one. There's no disagreement from that on the other side, either below or here. They didn't bring it. There's nothing there, either. Right. And I think to the extent there's a lack of clarity, even whether it would apply under state law, is a reason the Court shouldn't reach that issue here. I do think that this is a federal. It's your point in this case that there's no court that's limited itself to the consideration of the State's Tort Claims Act, which has a shorter statute of limitations of two years, that these cases have basically used the personal injury statutes for the states that are analogous to the federal law. That's correct, Your Honor. Usually they do use the personal injury statute of limitations. I think two more points on the issue of the one-year cutoff. One is that I think there's the best and most analogous statute of limitations that applies to this case would be the sexual abuse-specific statute of limitations in South Carolina, because this Court has held that the specific statute of limitations would govern the general one for purposes of selecting a statute of limitations for a federal claim. And I think there's one more point to be made about that one-year cutoff, and that's that there would be two steps here. One, does it apply under state law? As Your Honor pointed out, I think that's unclear whether it would apply to minority tolling under state law, because there seem to be decisions in the state court going both ways. The other problem is whether the federal court would adopt that statute, that one-year cutoff for a federal claim. I was more curious if nobody brought it up. For that reason, I don't think the Court should reach it here. But I think the Court can resolve this case by holding that the SCTCA does not apply to ER's Title IX claim for the purpose of the statute of limitations, and there are two reasons for that. I want to start with the text of that Civil Rights Remedies Equalization Act. I don't think the other side really disputes our interpretation of the text or how it applies here. They just say we forfeited our right to cite that on appeal. I don't think that's right because it goes to the very same issue, a fundamental issue that ER raised below, which is that the SCTCA is not analogous to Title IX. But even apart from the Equalization Act, the decision below conflicts with Supreme Court precedent, namely the Supreme Court's decision in Burnett v. Groton. That case tells us that when a federal court selects a statute of limitations to apply to a federal civil rights claim from state law, you don't just look at the state law that would apply to a state law claim against the same defendant. You also have to make sure that the policies behind the state statute align with the policies behind the federal statute, in particular that the state statute does not reflect particular state concerns that are, one, inconsistent with the federal statute, or two, of marginal relevance to the federal statute. And in particular, in Burnett, the Court held that you can't apply a state statute of limitations that's designed to specially restrict remedies against public entities to a federal statute designed to augment those remedies. And that's exactly the case here. In enacting Title IX, Congress- Can I ask you about that and related to the early argument you made with respect to the civil rights statute? So the district court obviously was not made aware of either one of these sort of, you call them nuances on the original argument. But the problem that I have is, you know, we oftentimes criticize district courts and reverse them when necessary. But it seems kind of unfair because you're suggesting that the court should be reversed on points that the court simply had no occasion to consider. Well, I think the court did have occasion to consider the key point here, and that's that whether or not the SCTCA was analogous to Title IX. That's the argument in the brief that ER made below. And I think particularly helpful on this question is Judge Wynn's decision in 68th Street Site Work Group, cited on page 12 of our reply, where you had a pure question of law just like this, whether the Superfund Act included a knowledge requirement. And the appellants cited several statutory provisions on appeal that they didn't cite below and made a new point based on those statutory provisions that they hadn't made below that certain other provisions of the statute reference a knowledge requirement, and they wanted the court to draw a negative inference that the core provision at issue in that case didn't include a knowledge requirement. That argument wasn't made below, but the court still considered it because it borne the fundamental question that was presented below. Did we consider it in order to affirm or to reverse? I believe it was to reverse, Your Honor. Yes, it was to reverse because the district court had found that the Superfund Act included a knowledge requirement, and I believe you reversed based on that argument in part. I think another helpful case is the Supreme Court's decision in Yee v. City of Escondido, where below the appellants had just argued that they argued a takings claim, and below they just argued a physical taking on appeal. I think the Supreme Court considered an argument of a regulatory taking because it bore in the same fundamental question. So I do think that the Act is properly before the court, but even if it weren't, I think you still have the clash between the two. And how would you articulate the same fundamental question that was before the district court and that's before us so that they would fall within the cases that you're talking about? Right. I think the fundamental question here is whether the SCTCA is analogous to Title IX, such that it's appropriate to borrow its limitations period. And I think helpful on framing this question is the Supreme Court's decision in Burnett because that's how the court framed it in Burnett. What the court held there is that the statutes were not analogous because the goals between those statutes clashed. There was a particularly short state statute of limitations that applied only to claims against the government as a public employer, and the court held that that clashed with the goals of the Federal Civil Rights Act 1983 because 1983 was designed to augment remedies against those same defendants. And that's particularly the case under Title IX as well because Congress made a policy decision to create a remedy against both public and private schools. In fact, most schools covered by the statute are public schools. The statute specifically calls out public schools within the definition of federal program or activity to which the statute applies. You have a line of Supreme Court decisions that's read the statute broadly and its cause of action broadly to provide effective remedies for victims of discrimination in cases against public schools. And in fact, more recently in Snyder Hill, the Sixth Circuit read Title IX broadly in the statute of limitations context for that reason. It extended the statute of limitations under a federal discovery rule based on the statutory goal to provide broad relief to victims of discrimination. And that goal clashes with the SCTCA because this is a statute that's specifically designed to impose sovereign immunity when the federal statute specifically strips sovereign immunity. It is designed to limit state remedies expressly against state defendants. And for that reason, the goals clash. And at minimum, the statute serves goals of marginal relevance to Title IX because nowhere in Title IX is there a hint that the statute serves a goal to protect public entities. And so I guess to paraphrase Burnett, because the statute serves that narrower state goal and because the statute of limitations is abbreviated precisely because of that, that makes it an inappropriate analog from which to borrow and the court should look elsewhere in state law for the statute of limitations. And here, I do think that the best fit is the sexual abuse statute of limitations. I think that avoids the issue that Your Honor Juddwin raised about the one-year cutoff. This court has adopted a case-by-case inquiry where it applies the statute of limitations that's more specific to the substance of the case. Where do we adopt the case-by-case determination for Title IX-type situations? The decisions in- The local circuit has done that. This circuit has. It started with a decision in Wolfsky, which I believe was a Rehabilitation Act case. And the cases that we cite about the Rehabilitation Act are relevant to the Title IX claim because courts generally interpret those statutes in parallel because they're all spending clause statutes. And, in fact, they're grouped under the Equalization Act. But hasn't the Supreme Court said that where state law provides multiple statutes of limitations for personal injury actions, that we should borrow the general statute? I think those- As opposed to what you're arguing about the sexual abuse statute. I do think that those cases are distinguishable. I believe this court has decided recent cases. So I think the Supreme Court decided that in Wilson in a case called Reed, which I believe was back in the 80s or 90s. And this court has continued until, you know, up to very recently to apply a case-by-case determination in the Title IX context. I think that a particularly helpful case on this is, although it's a district court case, it's the Northern District of Ohio's case in Dovey-Cleveland Metropolitan School District. It's a district court case, not even in our circuit. But it provides, I think, well, okay, to go back to the circuit case law, though, this court has applied a case-by-case determination to Title IX claims. In the Moore case, you had an employment claim, and the court applied the employment statute of limitations to that Title IX claim, the employment discrimination statute of limitations. Are you within the statute of limitations regardless, whether it's the general liability or the- Or the sexual abuse statute of limitations, yes, Your Honor. And to complete my answer to that question, in Willmink, the court applied a different statute of limitations to a student's claim for sexual misconduct, even though the court had previously applied the employment-specific statute of limitations. And in Your Honor's decision in Seminova, you discussed this, how the court applies different statutes of limitations to the same statute, depending on what the specific claim is. And you discussed how in a Rehabilitation Act context against- In the employment context, the court applies a different statute of limitations than it does for a Rehabilitation Act claim in the public accommodations context. So that is something this court does, and I think it would be inconsistent with this court's case law that applies more specific statutes of limitations to employment claims, to say we're just going to adopt one statute of limitations when it's a sexual abuse claim. And with that, I'll save the rest of my time unless there are further questions. Thank you very much. Mr. Brown. Thank you, Your Honor and Your Honors, and may it please the Court. My name is Stephen Brown. I'm here on behalf of the Beaufort County School District. Just to clear up, and if I talk too fast, slow me down, because I'm used to 10 minutes with our Supreme Court in South Carolina, so I've learned how to regurgitate a little too quickly. It is conceded, it was conceded in front of the trial judge, that if you come under the general statute of limitations in South Carolina or the sexual abuse statute of limitations, ER's claim is timely. The judge found, however, that neither one of those was the most analogous state statute of limitations. Instead, it was the South Carolina Tort Claims Act, which is a two-year statute of limitation. I apologize, I get a little dizzy. Say that again. You say it was conceded, what? The general, if you look in Judge Norton's order and on the transcript, under the general statute of limitations of just three years, don't get into the, as someone said, Supreme Court of South Carolina hip-hops or whatever, and that's very agreed. Yes, sir. But under that statute, or sexual abuse, the claim would be timely filed. I think under the general within a week or so. So the issue about the one year is not real. That's not in place, so that's why nobody briefed it. I understand your question, but that never got there. No, sir, no one was taken to that. So you're saying that if we do, in fact, apply that general statute, which is a personal injury one, for three years, then that's timely. Yes, sir. But you are here to argue that because it's a governmental entity, we should go under the State Tort Claims Act. Not per se that it's a governmental entity, but the most analogous statute of limitations under the facts. And counsel is correct. This circuit has been somewhat unique compared to other circuits. But you couldn't use the Tort Claims Act against anybody other than a governmental entity. I mean, you wouldn't get an analogy if you brought it against someone else. I mean, that's why I say it's a governmental entity. It's crucial here. It is a governmental entity, and that is crucial. And so what the trial judge did was sit there and to take the claims that were out there. They had brought original claims that they dismissed under the Tort Claims Act, and then they had a Title IX claim. And the judge said, let's look at what the allegations of the Title IX claims are. They essentially come down to the most analogous cause of action would be negligent supervision, and a negligent supervision claim under these facts as presented, which would be against the Buford County School District, which he is looking to its governmental status on the standard. So you think we should do a case-by-case analysis? I think that is the standard this circuit has previously set, is that unlike many circuits, it's very case-specific. Unlike any other. There's no other circuit that does that. Not to my knowledge, Your Honor, that I could find in my research. However, that language that's been used, and the counsel pointed out, is used throughout numerous cases in this Fourth Circuit. So it's not like one panel decided they were going to. So why doesn't Wilson tie us? I mean, admittedly, it deals with Section 1983. The Supreme Court said we don't do case-by-case approach on that. We always use the state's personal injury statute of limitations. You know, Your Honor, well, first of all, it is 1983, and 1983 is different than Title IX because Title IX created new causes of action. 1983 gave people rights to pursue constitutional violations. But in looking at Wilson, my general reading of it, and when you read cases that followed Wilson, was that it established, I thought, almost a per se rule, was just the way I took it, that you go with the general personal injury statute of limitations. But I mean, if you took this case-by-case basis, there's a South Carolina statute that's almost on all fours on this sexual abuse. There's a six-year statute of limitations. If you did the case-by-case way instead of the general approach, it looks a lot more analogous to me than the State Tort Claims Act. I think, Your Honor, if you go and look in South Carolina, the cases that have been decided, and they're in our brief, I think it's Duncan, City of Duncan, also City of Greenville, they address this how do you go back and forth with the sexual abuse statute and the Tort Claims Act statute. And they go with the Tort Claims Act every time, Your Honor. The sexual abuse statute, and Amicus filed a brief on this, and the brief is more on the principles of supporting victims of sexual abuse. And no one is opposed. I mean, we understand sexual abuse is a substantial problem. So that being as it is, getting back to the question on Wilson, if you look at cases that follow Wilson, it's generally the general statute of limitations. But there are cases where courts look at particular facts. Now, those are district court cases, Your Honors. But Wilson is not binding on this. I think counsel is correct. There's not a Title IX case out there that addresses this that we can find on the Tort Claims Act. There was the case out of the- The South Carolina Tort Claims Act, the section of it that provides for the statute of limitation, states that it applies to any action brought pursuant to this chapter. So is this action brought pursuant to the South Carolina Tort Claims Act? It's not brought pursuant to the Tort Claims Act, but the court made very clear in its order. It said counsel is hung up, counsel for the appellate, is hung up on this issue that this cannot be a Tort Claims Act case. This is not a Tort Claims Act case. The trial judge said, I understand that, but I'm trying to come up with the most analogous state court statute of limitations. So he wasn't saying it's a Tort Claims Act. If you look at it, I'm sure you have looked at it, but in his order, he's very clear on why he's getting where he's getting. Well, the appellate, I think, also argues that not only was it not brought under the Tort Claims Act, but it would not be cognizable under the Tort Claims Act, and for that reason that statute of limitations doesn't apply. I believe the negligent supervision is what the judge made it determined was most analogous, and I believe that claims for some of the violations that are set forth, and there are very broad violations in this complaint, would be. But, again, I think that's a bit of a red herring. I think the question is simply what is the most analogous statute of limitations? And what we haven't, you raised the issue. This is something that nobody briefed, but, you know, when you sit in a hotel room for two nights getting ready for something, fear is a good motivator, and you go through. The Equalization Act talks about remedies, that you have to make sure the remedies are the same. Statute of limitation, at least as I was taught in school, is not a remedy. A remedy is the outcome of what you're seeking in a lawsuit, be it money, be it equitable relief, be it declaratory relief, be it whatever relief the court deems just and proper. So having a statute of limitations of two years does not violate the act in and of itself. The same remedies are available to ER. It's just the time period she had to file. How would you, if you follow where you're going with the use of this Tort Claims Act, then how would you, how can you not apply this Tort Claims Act to a, say, a Monell claim under Section 1983? It's dealing with supervision, almost on point what you're talking about. Looks like to me that's a case that you would, if to follow you, you wouldn't follow Wilson, which says no, you do it. Wilson says those cases, if you look at the personal injury, but the most analogous statement to that type of case surely looks like to me it's a State Tort Claims Act statute of limitation. I think, Your Honor, when you go back to Wilson, you have to remember that was 1983, and we have to recognize that there, although we tend to sort of group everything together, there are differences between 1983 and Title IX. If it was a 1983 case and it was a Monell claim, for instance, or a claim against a governmental entity, following your logic, you need to look at the State Tort Claims Act, not the personal injury. I mean, it would apply for that. I'm just going to say if you follow, if that logic follows that this is most analogous, this situation of sexual abuse is most analogous to the type of claims you would bring in the State Tort Claims Act, it would seem to me you would bring a Section 1983-type action that could implicate the same kind of concerns that you would seek to recover from, particularly, and I use Monell because that's one of the instances which you can get the cities and others in because of much negligent hiring or whatever that gives liability under Section 1983. And I understand what Your Honor is saying there. I don't know that I'm going to concede that I would go ahead and argue the Tort Claims Act there or that it would be personal injury. I think I'd have to see exactly what it was. Well, you don't have to. Wilson says that's what it is. Wilson tells us what to do with 1983 actions. That claim right there is a Section 1983. Wilson tells us. We just do personal injury. Wilson tells us. But it doesn't follow under your logic why that would be so because that surely fits better on the State Tort Claims Act than this sexual abuse one does. That's my only point. I'm just saying it looks like it. I understand that, and I get back to the issue, Your Honor, of the judgment with all respect, that Title IX claims are different than 1983. You look at the specifics of it, and as my time gets down, I would like to make this point because I do think it's an important point. The Civil Rights Remedy Equalization Act, 42 U.S.C. 2000 D7 A2, and I'm going to just call that A2 if you all don't mind because I'm a little dyslexic with numbers and it will just start jumbling and make for a horrible record, et cetera. Section A2 was never brought up in opposition to the motion to dismiss for the statute of limitations. The motion was based upon the applicability of the South Carolina Tort Claims Act and the argument that the Sexual Abuse Act doesn't account, doesn't apply, and the general does not apply, that you go with the Tort Claims Act under this case. The district court held a hearing. We made sure the transcript was put in the supplemental appendix, not raised one time. We will not find it there. No motion to reconsider was filed. The first reference you get to the Equalization Act and this argument that the remedies are somehow different and therefore you can't go with the Tort Claims Act statute of limitation is in the opening brief to this court. Now, I recognize this court has the discretion to address issues that come before it, but this court has said, and if you'll allow me to dig in my notes for just a second, that although it's within your discretion under those circumstances where an issue has not been raised at all until it's on appeal, it should be done sparingly and under the most exceptional of circumstances. And so then I think this court, to get to the actual issue, before you even get to the merits of it, has to act the fact, is this fundamental error? Did the ruling of the trial court and the fact that they don't raise it until their opening brief, does that constitute fundamental error? And my reading of this court's case law is, well, we start off by doing the plain error analysis and then we go a step further. But if you can't get through plain error, you're never going to get to fundamental error. In fact, this court has said that the bar for plain error is much higher than that with regard to, I mean, I'm sorry, fundamental error is much higher than that with regard to plain error. And the briefing in this case did not even address fundamental error analysis. And this court has, and we cite, a case law that says if it's not briefed, if you don't brief why you didn't bring it up below, then we can't get to it. And the exceptions are if it's something that is such a – Is that a forfeiture or is that a waiver? I think it's a waiver, Your Honor. I think the language that's used is a waiver in the case law. But the waiver result is you don't get to it. You don't get to it. If you don't brief something, you don't get to it. Yes, sir. And I know it's a different circuit, but I thought the Tenth Circuit had a rather witty little saying about us that we're not the court of second chances and we're not the court of, ooh, I got a new argument for you. And we cite that in a footnote. And I think that that is the case here. I do not believe the sexual harassment – I'm sorry, sexual abuse statute of limitations, which effectively takes you up to age 27, applies. There are no allegations of this complaint that any school official abused ER in any way. The sexual abuse is not by the school. This is not a case where any school employee, person under their control, et cetera, committed any act of sexual abuse. The allegations are simply negligent supervision, claims that they didn't respond appropriately to information that's alleged and that we assume for purposes of this motion is true. The allegations are certainly among some of the worst I've seen in terms of the sexual abuse type situation. It went on for quite a while with a young female student culminating in what she said was two rapes by a football player that ultimately did not go to trial because I guess she didn't testify. And I don't know what that means, but, I mean, it's pretty bad stuff. But here we're just dealing with the statute of limitations on it, so we're not getting into that aspect of it. But it is – it's intriguing to consider. I mean, I don't know what would happen to the rape charges. I probably don't have a statute of limitations for the criminal charge of rape, so you still could deal with that. But that would be outside of the civil side of where she's pursuing this. Within the allegations of the complaint, Your Honor, though, I do believe it states that ER refused to give a statement against the alleged rapist. And my understanding is I don't believe charges were made as a result of that. And it also states, I believe, in the complaint that it was much to the chagrin of her mother. Both of her parents worked in the Beaufort County School District. Her father was an administrator and her mother was a teacher. Whatever happened to ER, I don't dispute, reads horribly in the complaint. And we're just at the complaint stage, so we haven't gotten into the discovery to say what is and is not correct. But here we're on the question of, number one, is there a waiver? Will this court allow you to wait until your opening brief to come up with a new theory? Because if you look, their theory is it's either sexual abuse statute of limitations or it's the general personal injury statute of limitations. Not, and they knew we were moving for Tort Claims Act. They knew that was the basis of our argument. And they did not ever raise, by the way, under Section A-2, you can't do this, because somehow the remedies would be different at all. That was not, you will not find it in the record until the opening brief. Can I take you back to the back and forth you had with Judge Wynn about Wilson and the civil rights statutes in 1983 actions? And your response to the questions about why the result here shouldn't, that we shouldn't follow Wilson, is that you said Title IX is different. That's what you said. Yes, sir. Okay. But that doesn't really help us. So what is it about the difference that makes, that suggests a different result? In reading the background of Wilson and reading Wilson and all of the case law that's followed from it, it seemed that 1983 there were still efforts going on by maybe certain states to keep bits and pieces of sovereign immunity, et cetera, et cetera. And so Wilson came in to try to say let's clean this up. Let's have a presumption that it will be the personal injury cause of action. And I do believe it's a presumption. I think it can still be overcome under certain circumstances in Wilson, or at least I've read district court cases where they've done so. Those have not been reversed, so we take them for what they're worth. They're outside the circuit as well. Title IX, Your Honor, and especially in this circuit, in this very circuit, we look very specifically, we don't have the default of Wilson in Title IX. When you say we, it's... We in this circuit. I'm sorry. I don't mean to take the... But the question is why shouldn't we? What is it about Title IX that makes the difference, all the difference in this case, according to you? Well, because Title IX encompasses, as would 1983, but Title IX encompassed new claims. It created new claims. And so the district courts, you know, coming up with the proper statute of limitations, according to Congress and according to all the history of the legislation, et cetera, want to take into consideration very carefully the sort of specifics of the state and its rules and how it deals with statute of limitations. And that is why the Fourth Circuit says we look very specifically at the facts. We make a factually intensive determination. Case by case. Yes, sir. But it also talks about, I think... I don't know of a case that's published that we've said that, what is that case you were citing? Factually... It's not a published opinion. Factually intensive? That says we do a case by case, and that was, both of you alluded to it. It's in, I apologize, it's in my brief and it's there. It does exist, I promise. And it's published. Yes, sir. I believe it is published. I wouldn't bet my life on it, but I'm 80%. I'm sorry to think it's published. We won't spend time on it because that's easy to determine. But let me also say, it seems to me that you want us to rule against eight other circuits that specifically address this issue and says you go to the person of interest. And one particular circuit, I don't know, it might have been the Eighth Circuit, said, it analogizes, it says Title IX is like Title VI. Title VI is very closely aligned with the Section 1983 claim. Walk yourself right back into Wilson. This is smooth to show you how it all ties in. And yet you say it's because this circuit has a unique set of cases that say we look case by case. And that's going to turn on whether maybe someone else, maybe I'm just overlooking it. I think the cases you cited are unpublished, but I don't think they're published opinions. And if you don't have published opinions, we don't say that. That might be some guidance we look at. But the end result is the outcome would be to go against eight other circuits that have gone completely the other way on this. My time is up, but may I answer that question, Your Honor? I'm not asking you to go against eight other circuits because eight other circuits have not addressed a state Tort Claims Act type limitation issue. They have not. They have looked at a variety of other cases. But if you go through the various cases that counsel cited. We have a case that says that the identity of the defendant can make a difference in a Title IX. No, sir, and they have no cases that address the Tort Claims Act. I wrote down from counsel. We would be the first to do that. Yes, sir. There are no cases. According to counsel, there are no cases that have addressed whether the Tort Claims Act provides for a shorter statute of limitations. So I'm not asking you to go against any other sister circuit. I'm asking that you affirm what the district court did, which was to make a thorough analysis of what the most analogous cause of action was. I thank this court for its time. Thank you, Mr. Brown. A couple of points. Stanley in the Ninth Circuit, Your Honor, refused to apply a state Tort Claims Act to a Title IX claim and opted to apply the general personal injury statute of limitations. You have eight circuits that said you, when you use the Title IX action, should borrow from the state's personal injury statute. That's a pretty strong law of other circuits. The focus here is that we should be different, because somewhere there's a case that says we should do it case by case, and you said it, so I'm sure you have a site to it. And it's published? Published. Published. What is it? I think the best decision to look at is ought. I believe it's cited on page 30 of our opening brief, which discusses in the Rehabilitation Act context, how the court has applied different statutes of limitations based on the type of discrimination claim that's alleged. Whether it arises in the context of a public accommodations context or an employment context, the court applies different statutes of limitations to the same statute. So a totally different statute. It's not a totally different statute. There's a mountain of case law that interprets the Rehabilitation Act's cause of action in parallel with Title IX's cause of action, because they're both spending clause statutes, and they refer to the same remedies. If Your Honor looks at the Supreme Court's decisions, and I think Barnes is one of them. What I'm looking for is a case that would say we don't follow Wilson, which we have to, I think, with the Supreme Court case. Wilson makes it very clear, at least for Section 1983, when you do the analogous determination, each circuit did it by saying it looks like a Title VI. Title VI is very close to the line to Section 1983. There it is. Both the Rehabilitation Act and Title IX borrow Title VI's remedies. So that's why courts interpret them in parallel. So I think it would be, I don't, I'm not quite sure how the court would get around the inconsistency if it reads Title IX differently than the way it's read the Rehabilitation Act in this context. But I do think, you know, we still prevail if the court applies the personal injury limitations period. I do want to clear up one thing with respect to the… I just heard you prevail because it's conceded. It shouldn't matter to you whether it's personal injury or whether it's the other way around. Correct. It's conceded, Your Honor. What I understand from what the counsel says is that it was conceded at the beginning that if it applies, it's it. Why do you need to argue whether it's sexual abuse or not if that's true? Right. It doesn't matter for purposes of this appeal. That was conceded at the beginning of the trial? That's correct. And I do think it would be helpful to provide guidance on what's the correct statute of limitations here. So it doesn't matter to you? That's correct, Your Honor. And as to the forfeiture issue, to the extent that the court has any hesitation about forfeiture here, I just want to make clear that the other side has only argued forfeiture with respect to the Equalization Act. That's what you heard here at argument today, and that's the only thing they argued in the brief. So, for example, starting on page 4 of their brief, appellant raised her argument regarding 42 U.S.C. 2007 for the first time on appeal. Nothing about forfeiting any of the other arguments that we make today. So our argument based on the Supreme Court case law, which is a distinct argument, based on Burnett and Felder in the Supreme Court case law, holding that you have to make sure that the purposes behind the federal statute and the state statutes align and how that there's a clash here. That all applies, and that's properly before the court, and I don't take there to be any dispute about that. I want to address the point that counsel made for the first time at oral argument about how the Equalization Act refers to remedies and a statute of limitations isn't a remedy. It's not our argument that a statute of limitations is a remedy. What we're saying is that however you interpret the word remedies, even if it's just damages or an injunction, those damages or an injunction or your right to sue aren't available to the same extent against public or private schools if you can only pursue those remedies for two years against public schools, but you can pursue them for three years against private schools. One more thing. My friend on the other side referenced that ER refused to give a statement to the police, and I just wanted to point out that as alleged in the complaint, that's because one of the school employees she reported to actually pressured her not to complain. Well, that's relevant here, I think, because it speaks to the reason that the South Carolina Legislature passed the Sexual Abuse Statute of Limitations just for this specific type of case and for those specific types of concerns, because sexual abuse victims often face pressures not to report. You're dealing with trauma and other issues that require more time to file lawsuits, and that dovetails with the purposes of Title IX, and for that reason, I think the Court should apply the Sexual Abuse Specific Limitations period. Thank you, Mr. — oh, do you have another question? Thank you, Mr. Willett. Thank you. The Court thanks counsel for their arguments. We'll come down and greet you and adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, James Andrew Wynn, Stephanie D. Thacker